UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS OSTLY,

           Plaintiff,

    v.

CITY AND COUNTY OF SAN
FRANCISCO, et al.,

           Defendants.

Case No.  21-cv-08955-EMC

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

Docket Nos. 34, 41

## I.      <u>INTRODUCTION</u>

Defendants Chesa Boudin and City and County of San Francisco ("CCSF") move for an order entering summary judgment on Plaintiff Thomas Ostly's First Amended Complaint. Plaintiff files suit against Defendants for (1) violating 42 U.S.C. § 1983 by taking adverse employment actions against Plaintiff to retaliate against and suppress his protected speech; (2) violating 42 U.S.C. § 1983 by taking adverse employment actions against Plaintiff to retaliate against and suppress his protected petitions; (3) violating Plaintiff's Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983 by (a) filing a complaint against Plaintiff with the State Bar and (b) ending an indemnification agreement between Defendant CCSF and Plaintiff concerning the complaint; and (4) violating California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(j)-(k), by harassing Plaintiff due to his age and for unreasonably failing to take the steps necessary to present such harassment.  Plaintiff also brings claims solely against Defendant CCSF for (1) violating FEHA, Cal. Gov't Code § 12940(a), by firing Plaintiff due to his age and (2) violating FEHA, Cal. Gov't Code § 12940(h), by firing Plaintiff as retaliation for complaining about the alleged harassment he faced due to his age.  Defendants contend that

United States District Court
Northern District of California

1    Plaintiff has proven neither that he faced actionable discrimination nor that his constitutional

2    rights were violated.

3           Having considered the parties' briefs and accompanying submissions, as well as the oral

4    argument of counsel, the Court hereby **GRANTS** the motion for summary judgment.

5                       **II.        FACTUAL AND PROCEDURAL BACKGROUND**

6           Plaintiff Thomas Ostly is a former Assistant District Attorney ("ADA") in the San

7    Francisco District Attorney's Office ("SFDA").  Docket No. 1 Ex. D, at 2-4 (First Amended

8    Complaint ("FAC")).  Plaintiff's superiors worked in the SFDA and the San Francisco City

9    Attorney's Office, and Plaintiff's employer was the CCSF.  *Id* at 2.  Plaintiff worked for the CCSF

10   as an at-will employee from January 2014 until January 2020.  *Id.* at 2-4; Docket No. 35 (Pl.'s

11   Opp'n ("Opp'n")) at 2; Docket No. 37 ("Reply") at 5.  Plaintiff alleges that the CCSF, as well as

12   the District Attorney ("DA") at the time, Defendant Boudin, took adverse employment actions

13   against him in violation of 42 U.S.C. § 1983 and FEHA.  FAC at 4.

14          Below are the key events and timeline relevant to the facts of this action:

15          •   2017—Plaintiff reported two attorneys with the San Francisco Public Defender's

16              Office ("SFPD") for "not communicating settlement offers to defendants who

17              might accept them over the [SFPD's] objection."  Opp'n at 5; *accord* Docket No.

18              36 ¶ 15 ("Pl.'s Decl.").

19          •   2018-2019—With the permission of his superiors, Plaintiff notified the *San*

20              *Francisco Chronicle* that SFPD attorneys regularly failed to communicate

21              settlement offers to their clients.  Pl.'s Decl. ¶ 16; Opp'n at 5; FAC ¶ 11

22          •   March 2019—The *San Francisco Chronicle* article was published on March 7.

23              Opp'n at 5; Docket No. 36-6 Ex. 6 (*Chronicle* article).  Plaintiff stated that he

24              immediately told his supervisors that he expected SFPD employees to retaliate

25              against him—including by filing a California State Bar complaint ("bar

26              complaint") against him—because of the article's contents.  Opp'n at 5.  Plaintiff

27              told his superiors, and continued to contend, that SFPD attorneys were engaged in a

28              "pattern and practice" of filing bar complaints and leaking them to the press "to

2

tarnish the public reputation of ADAs who were willing to take their cases to trial"
or who tended to resolve "cases for inappropriately low dispositions."  FAC ¶¶ 13-
14.

- June 24, 2019—Assistant Public Defender Peter Calloway filed a bar complaint
  against Plaintiff related to issues that occurred during multiple trials at which
  Plaintiff was the prosecutor.  FAC ¶ 17; Docket No. 34-1 Ex. E, at 1; Docket No.
  34-1 Ex. A (Pl.'s Responses to D.'s Special Interrogatories ("Interrogatory
  Responses")), at 2.[1]  Specifically, the complaint alleged a "pattern of misconduct"
  comprising a failure to disclose potentially exculpatory evidence (*i.e.*, a *Brady*
  violation), a violation of the duty of candor, multiple violations of "the duty to
  respect the courts and judicial officers," and two instances of improper prosecution.
  Docket No. 34-1 Ex. E, at 1.  This complaint was publicly accessible, as Plaintiff
  had it unsealed.  Opp'n at 8.
- 2019—After Mr. Calloway filed the bar complaint, the SFDA agreed to indemnify
  Plaintiff for his legal expenses in defending against it.  FAC at 2.
- July 26, 2019—Plaintiff served a public records request on the SFPD pursuant to
  the Public Records Act and demanded that the SFPD produce documents relevant
  to the bar complaint.  *Id.* at 8, 13; S.F. Admin. Code § 67.
- October 15, 2019—Pursuant to the San Francisco Sunshine Ordinance, Plaintiff
  petitioned the Sunshine Ordinance Task Force ("SOTF") seeking additional
  documents from the SFPD.  *Id.* at 9; S.F. Admin. Code § 67.21.
- January 10, 2020—Two days after becoming DA, Defendant Boudin terminated
  Plaintiff's employment, allegedly without cause.  FAC ¶¶ 28-29.  Plaintiff alleged

---

[1] Plaintiff alleged that an SFPD employee filed a separate bar complaint against him in 2018, but
that he did not become aware of this complaint until Defendants produced a completely redacted
copy of the complaint in this case.  *See* Opp'n at 5 ("Ostly did not become aware of this 2018 bar
complaint until a completely redacted copy was provided during discovery. Ostly still does not
know any of the content of that complaint."); Pl.'s Decl. ¶ 17.  Defendants' counsel states that he
saw an unredacted version of the bar complaint and that it was neither filed against Plaintiff, nor
did it mention him.  Docket No. 37-1 ¶ 3.

1    that Defendant Boudin terminated him "out of fear any investigation into

2    [Plaintiff's] complaints would reveal [Defendant Boudin's] own participation in the

3    unethical conduct while a [Public Defender] and his ongoing ratification of the

4    same conduct while acting DA." *Id.* at 3.

5    • January 21, 2020—Defendant Boudin informed Plaintiff via letter that the SFDA

6    would no longer indemnify his legal costs. FAC ¶¶ 32-37 (stating that "the SFDA

7    would no longer 'pay for or otherwise provide for the defense of [Plaintiff]' in

8    connection with the Bar Complaint, and that such decision would apply

9    retroactively to November 26, 2019," and noting that the SFDA would not

10   indemnify Plaintiff for any other matter related to his former employment with the

11   SFDA (quoting Docket No. 34-1 Ex. D)).

12   On July 26, 2021, Plaintiff filed a complaint in San Francisco Superior Court. Docket No.

13   1 at 1. On November 8, Plaintiff filed his First Amended Complaint alleging the six new causes

14   of action that are now at issue and seeking reinstatement with full back-pay and benefits,

15   compensatory damages, punitive damages, prejudgment and post-judgment interest, and attorney

16   fees. FAC at 1, 17-18. That same day, because of Plaintiff's 42 U.S.C. § 1983 claims, Defendants

17   removed this action to the Northern District of California pursuant to 28 U.S.C. § 1441(a) due to

18   district courts' 28 U.S.C. § 1331 Federal Question jurisdiction. Docket No. 1 at 2-3.

19   On March 9, 2023, Defendants filed this motion for summary judgment. Docket No. 34

20   (Defs.' Mot. Summ. J. ("Mot.")). Plaintiff opposed, arguing that a reasonable finder of fact could

21   find for him on both his Section 1983 and FEHA claims and that his claims do not fail as a matter

22   of law. Opp'n.

23   ### III.    LEGAL STANDARD

24   Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment

25   [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and

26   the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is

27   genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.

28   See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a

United States District Court
Northern District of California

4

1   scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could

2   reasonably find for the [nonmoving party]." *Id.* at 252.  At the summary judgment stage, evidence

3   must be viewed in the light most favorable to the nonmoving party and all justifiable inferences

4   are to be drawn in the nonmovant's favor.  *See id.* at 255.[2]

5       Where a defendant moves for summary judgment based on a claim for which the plaintiff

6   bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a

7   showing sufficient to establish the existence of an element essential to [the plaintiff's] case."

8   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

9                        **IV.**   **DISCUSSION**

10      In their motion for summary judgment, Defendants argue that Plaintiffs Section 1983 and

11  FEHA claims fail.  Defendants argue that Plaintiff: (1) provides no evidence showing that

12  Defendants took adverse actions against him because of his protected speech, (2) raises no issues

13  with the process Defendants provided him in connection to the termination of his allegedly

14  protected interest, and (3) puts forward no evidence that Defendants took adverse actions against

15  him because of his age.  For the reasons stated below, the Court grants summary judgment.

16  A.   42 U.S.C. § 1983

17      Section 1983 states that:

18          Every person who, under color of any statute, ordinance, regulation,
            custom, or usage, of any State . . . subjects, or causes to be
19          subjected, any citizen of the United States or other person within the
            jurisdiction thereof to the deprivation of any rights, privileges, or
20          immunities secured by the Constitution and laws, shall be liable to

21  _____

22  [2] Evidence may be presented in a form that is not admissible at trial so long as it could ultimately
    be capable of being put in admissible form.  *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that
23  the material cited to support or dispute a fact cannot be presented in a form that would be
    admissible in evidence"); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir.
24  2004) ("Even the declarations that do contain hearsay are admissible for summary judgment
    purposes because they 'could be presented in an admissible form at trial'").  An evidentiary
25  objection during summary judgment "functions much as an objection at trial, adjusted for the
    pretrial setting. The burden is on the proponent to show that the material is admissible as presented
26  or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory
    committee's note to 2010 amendment; *Lizarraga-Davis v. Transworld Sys. Inc.*, No. 18-CV-
27  04081-BLF, 2022 WL 4485813, at *2 (N.D. Cal. Sept. 27, 2022) ("[O]nce [plaintiff] raised a
    hearsay objection, the burden was on [defendant] to either show that the [evidence] was
28  admissible as presented or explain how the information contained therein could be presented in
    admissible form.").

United States District Court
Northern District of California

1

> the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

2   42 U.S.C. § 1983.  Plaintiff brings three claims under Section 1983 against Defendants: (1)

3   retaliation against and suppression of his First Amendment right to free speech, (2) retaliation

4   against and suppression of his First Amendment right to petition, and (3) deprivation of his

5   Fourteenth Amendment right to procedural and substantive due process and equal protection.

6   FAC ¶¶ 38-79.  Defendants argue that no adverse employment action taken against Plaintiff was

7   predicated upon any protected speech.  Mot. at 15-21.  They also argue that they provided Plaintiff

8   adequate process regarding the termination of the indemnification agreement.  The Court agrees

9   with Defendants on both counts.

10       1.   First Amendment Rights

11       Defendants move for summary judgment on Plaintiff's Section 1983 claims regarding his

12   First Amendment rights.  Plaintiff alleged that Defendants retaliated against him and suppressed

13   his protected speech and petitions when Defendant Boudin (1) terminated Plaintiff's employment

14   and (2) terminated Plaintiff's indemnification agreement with the SFDA.  FAC ¶¶ 38-57.  Plaintiff

15   also alleged additional "adverse employment actions" taken by SFPD employees.  *See* FAC ¶¶ 44,

16   54 (characterizing the Defendants' allegedly retaliatory conduct as "adverse employment

17   actions").  However, Plaintiff is not an employee of the SFPD; he was employed by the SFDA,

18   which *is adversarial to* the SFPD.  *See, e.g.*, Opp'n at 6 (describing a case Plaintiff tried against an

19   SFPD attorney).  Thus, the actions of SFPD attorneys while Plaintiff was an SFDA are not

20   actionable as retaliatory employer conduct here.

21       Plaintiff listed seven instances of speech or petitions that he deems to be protected:

22
> (i) telling the press about the misconduct he had observed to shed
> light on the Public Defenders' violation of its criminal defendants'

23
> civil rights; (ii) telling colleagues in the [SFDA] of the [SFPD's]
> pattern of conduct of filing Attorney Misconduct complaints with

24
> the State Bar against ADA's if the ADA had a history of and
> reputation of prosecuting cases through trial rather than dismissing

25
> or resolving the cases for inappropriately low dispositions; (iii)
> telling colleagues and superiors that he anticipated that such a

26
> complaint would be filed against him after a contentious interaction
> with an Assistant Public Defender; (iv) complaining to his

27
> supervisors when such a complaint was filed against him, and the
> [SFPD's] was systematically filing frivolous State Bar complaints

28
> against prosecutors; (v) filing Public Records Act requests and a

United States District Court
Northern District of California

1    Petition with the Sunshine Ordinance Task Force to obtain
     documents relevant and necessary for his defense of the State Bar
2    Complaint brought by the [SFPD], which, on information and belief,
     would bring to light unfavorable and unflattering information
3    regarding BOUDIN; (vi) his comments after BOUDIN was elected
     that BOUDIN would fire prosecutors who had a history of
4    prosecuting cases rather than accepting plea bargains that were
     unreasonably low dispositions; and (vii) reporting the misconduct
5    described herein to the State Bar.

6    FAC ¶ 42.

7          Plaintiff was a public employee.  *See id.* at 2.  In situations where a public employee brings

8    a First Amendment retaliation claim, "[t]he Supreme Court has established a framework to balance

9    the free speech rights of [the] government employees with the government's interest in avoiding

10   disruption and maintaining workforce discipline."  *Moser v. Las Vegas Metro. Police Dep't*, 984

11   F.3d 900, 904 (9th Cir. 2021).  This framework—distilled from *Pickering v. Bd. of Ed. of Twp.*

12   *High Sch. Dist.*, 391 U.S. 563 (1968), *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274

13   (1977), and *Connick v. Myers*, 461 U.S. 138 (1983), among other cases—"has become known as

14   the *Pickering* balancing test." *Hernandez v. City of Phoenix*, 43 F.4th 966, 976 (9th Cir. 2022).

15   The *Pickering* balancing test has five steps that must be resolved:

16          (1) whether the plaintiff spoke on a matter of public concern; (2)
            whether the plaintiff spoke as a private citizen or public employee;
17          (3) whether the plaintiff's protected speech was a substantial or
            motivating factor in the adverse employment action; (4) whether the
18          state had an adequate justification for treating the employee
            differently from other members of the general public; and (5)
19          whether the state would have taken the adverse employment action
            even absent the protected speech.
20

21   *Eng v. Cooley*, 552 F.3d 1062, 1070-72 (9th Cir. 2009); *see also Buckheit v. Dennis*, 713 F. Supp.

22   2d 910, 921 (N.D. Cal. 2010) (giving a similar standard in the context of a protected petition, with

23   a first element requiring "that the plaintiff was engaged in constitutionally protected activity"

24   (internal quotation marks omitted) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir.

25   2000))).  Plaintiff bears the burden of showing the first three elements, and if he succeeds, the

26   burden shifts to Defendants to show elements four or five, either one being sufficient to defeat

27   Plaintiff's claims.  *See Eng*, 552 F.3d at 1070-72.  Additionally, Plaintiff must establish that

28   Defendants took adverse employment actions against him that were reasonably likely to chill his

United States District Court
Northern District of California

1    exercise of his First Amendment rights.  *See Coszalter v. City of Salem*, 320 F.3d 968, 974-77 (9th

2    Cir. 2003) (discussing the interplay between retaliation and the chilling of protected speech); *Eng*,

3    552 F.3d at 1070 ("It is well settled that the state may not abuse its position as employer to stifle

4    'the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on

5    matters of public interest.'" (quoting *Pickering*, 391 U.S. at 568)).

6         The first three elements of the *Pickering* balancing test require Plaintiff to establish that he

7    spoke on a matter of public concern (*i.e.,* that his speech was relevant to the community), that he

8    spoke as a citizen (*i.e.,* that his speech was not intertwined with his public duties), and that the

9    retaliation was substantially motivated by Plaintiff's speech.  *See Eng*, 552 F.3d at 1070-72

10   (outlining this).  Because Plaintiff fails to establish these elements, his prima facie case, the Court

11   does not address the fourth or fifth steps of the *Pickering* balancing test.  Plaintiff's speech and

12   petitions do not qualify for First Amendment protection, nor did they cause Defendant Boudin to

13   terminate his employment and indemnification agreement.  Therefore, Plaintiff's Section 1983

14   First Amendment claims fail.

15              a.        Whether Plaintiff's Speech Was Protected

16        When establishing a First Amendment retaliation claim, "the plaintiff bears the burden of

17   showing that the speech addressed an issue of public concern."  *Eng*, 552 F.3d at 1070.  This

18   "public concern inquiry is purely a question of law."  *Id.*; *see also Rendish v. City of Tacoma*, 123

19   F.3d 1216, 1220 (9th Cir. 1997) ("[A] public employee's litigation must involve a matter of public

20   concern in order to be protected by either the Petition Clause or the Speech Clause of the First

21   Amendment.").  Speech addresses a matter of public concern when it can be "fairly considered as

22   relating to any matter of political, social, or other concern to the community. . . . [This] must be

23   determined by the content, form, and context of a given statement, as revealed by the whole

24   record."  *Connick*, 461 U.S. at 146-48.  Content is the most important factor in this analysis.  *See*

25   *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009).

26        Plaintiff also "bears the burden of showing the speech was spoken in the capacity of a

27   private citizen and not a public employee."  *Eng*, 552 F.3d at 1071; *see also Brown v.*

28   *Villaraigosa*, No. CV 06- 4169 SJO (JC), 2010 WL 11483802, at *12 (C.D. Cal. Mar. 30, 2010),

United States District Court
Northern District of California

*report and recommendation adopted*, No. CV 06-4169 SJO(JC), 2010 WL 11483803 (C.D. Cal. June 17, 2010) (same, in the context of petitions).  "[S]tatements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'perform[ing] the tasks [the employee] was paid to perform.'" *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) (quoting first *Marable v. Nitchman*, 511 F.3d 924, 932-33 (9th Cir. 2007), and then *Freitag v. Ayers*, 468 F.3d 528, 544 (9th Cir. 2006)).  Making this determination "is a mixed question of law and fact." *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1260 (9th Cir. 2016); *see also Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1071 (9th Cir. 2012) ("The scope and content of a plaintiff's job responsibilities is a question of fact over which we lack jurisdiction, while 'the ultimate constitutional significance of the [undisputed] facts' is a question of law." (quoting *Posey*, 546 F.3d at 1129)).  The Ninth Circuit has enumerated three guiding principles to use in determining whether a plaintiff's communications were made as a private citizen or public employee: (1) "whether or not the employee confined his communications to his chain of command;" (2) the nature of "the subject matter of the communication;" and (3) whether the "public employee speaks in direct contravention to his supervisor's orders."  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1074-75 (9th Cir. 2013).

### i.     Statements to the Press

Plaintiff alleged that he "alerted the press to the misconduct he had observed [of SFPD attorneys not communicating settlement offers to clients] to shed light on the Public Defenders' violation of defendants' civil rights."  FAC ¶ 11.  However, Plaintiff's interactions with a reporter from the *San Francisco Chronicle* and other press involved conduct in *his* specific case, not systemic conduct.  Plaintiff avers that the *Chronicle* "reporter was in court when Ostly made a record of the misconduct and requested dismissal of defendant's case."  Opp'n at 5.  During oral argument, it was clarified that Plaintiff was an attorney for only one of the multiple cases discussed in the published *Chronicle* article (the case which involved allegedly stolen Beyoncé concert tickets).  The only reference to Plaintiff in the article is where it states that "the district attorney's office was convinced the defendant was telling the truth and moved to drop the case."

Docket No. 36-6 Ex. 6, at 6.  Plaintiff's discussions with the *Chronicle* and the eventual article, so far as it pertains to Plaintiff, concerned his own client, not the SFPD's systemic practices. Similarly, in an email with a *San Francisco Examiner* reporter—the only email between Plaintiff and the press that Plaintiff admitted into evidence—Plaintiff focused on the alleged misconduct in the cases he litigated and on the bar complaint filed against him, not on the SFPD's systemic practices.  *See* Docket No. 36-14 Ex. 14 ("I heard the public defender sent out an office wide email asking all staff for dirt on me and all they got was what they filed in the bar complaint. In my final declaration I reference cases where I have had to dismiss felonies in the interest of justice because of public defender misconduct.").  Thus, no reasonable inference can be drawn from the evidence in the record that Plaintiff's interactions with the press went beyond the cases he personally litigated.  Such limited speech, focusing on his own cases and not systemic conduct, does not implicate matters of public concern.  *See Roe v. City & Cnty. of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997) ("[P]ublic employee speech reported by the press almost by definition involves matters 'of public concern.' . . . However, if the communication is essentially self-interested, with no public import, then it is not of public concern." (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1202 (3d Cir. 1988))); *see also Connick*, 461 U.S. at 154 (noting that a questionnaire that was "most accurately characterized as an employee grievance concerning internal office policy" had "touched upon matters of public concern in only a most limited sense"); *Desrochers*, 572 F.3d at 718 (same, quoting *Connick*).

Plaintiff's conclusory allegations suggesting that he raised broader concerns do not show otherwise.  *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); *Armstrong v. California State Corr. Inst.*, No. 1:10-CV-01856 OWW JLT, 2011 WL 773425, at *4 (E.D. Cal. Feb. 25, 2011) ("Although illegal activity by prison officials may rise to a public concern, the term 'illegalities' as used by Plaintiff is vague and conclusory. Plaintiff must provide additional facts regarding the content of her speech to state a cognizable claim."); *Bouma v. Trent*, No. CV-10-0267-PHX-NVW, 2010 WL 1531171, at *5 (D. Ariz. Apr. 15, 2010) ("Here the Amended Complaint is wholly devoid of facts sufficient to

United States District Court
Northern District of California

support a First Amendment violation . . . .").

Further, Plaintiff's statements to the press are also not protected because he made them in his capacity as a public employee. Plaintiff received his supervisors' permission before he talked to the press. Pl.'s Decl. ¶ 16. He was thus speaking in his capacity as prosecutor in the DA's office. Additionally, as stated above, his statements related to his clients, and not broader systemic issues. *See* Docket No. 36-6 Ex. 6. This establishes that Plaintiff made his statements in his capacity as a public employee. *See Miller v. City of Los Angeles*, No. CV 13-5148-GW(CWX), 2015 WL 12811238, at *20 (C.D. Cal. Oct. 22, 2015) (finding, where plaintiff received his supervisors' pre-approval "and issued the press release in order to secure full access to Fire Department documents and fulfill his obligations as" Independent Assessor, that plaintiff's press release was made in his capacity as a public citizen).

Therefore, Plaintiff's statements to the press are not protected speech.

ii.   <u>Public Records Act Requests and SOTF Petition</u>

Plaintiff petitioned the SFPD for documents though a Public Records Act Request and through a complaint to the SOTF. Plaintiff sought records on:

> a) the alleged misconduct of employees of the SFDA, b) allegations of misconduct committed by certain members of the Public Defender's Office, c) allegations of misconduct made by certain members of the Public Defender's Office against employees of the Public Defender, d) complaints filed against employees of the SFDA and the Riverside County District Attorney's Office, e) Plaintiff or any scheduled meetings pertaining to Plaintiff, and f) San Francisco Chronicle news articles.

FAC ¶ 20. Although these requests seem broad at first glance, Plaintiff had a narrow purpose in seeking these documents. Plaintiff convinced the SFDA to pay the fees associated with his petitions after he "explained that procuring the requested public records was necessary to aid in Plaintiff's defense of the Bar Complaint, the allegations of which arose in the course and scope of Plaintiff's job duties." *Id.* ¶ 33. Indeed, Plaintiff states that many of the documents he sought focus specifically on him. *See* Opp'n at 6-7 ("Solomon[, an SFPD attorney,] used her City email account to disparage Ostly to hundreds of City employees, including Boudin. Ostly . . . later requested [the emails] from the City through public record requests."); *id.* at 7 (stating that SFPD

1    emails complaining about and targeting Plaintiff "were finally turned over in discovery despite the

2    City denying their existence at public record request hearings").  Although Plaintiff's petitions

3    were public, they did not touch upon matters of public concern.  Plaintiff filed petitions to obtain

4    documents specifically concerning his defense against a bar complaint against him that focused on

5    his alleged misconduct.  Documents concerning such individually focused content and context do

6    not address a matter of public concern.[3]  *See Bouma*, 2010 WL 1531171, at *5 (finding petition

7    did not address issues of public concern where plaintiff's claims "may best be characterized as

8    private personnel disputes and grievances indicative of an internal power struggle in the

9    workplace. They are of no significant relevance to the public's evaluation of [defendant's] official

10   competence or the substantive functioning of the [Globe Unified School District].").

11       Hence, Plaintiff's petitions for records in the context of defending the State Bar complaint

12   against him are not protected speech.

13                              iii.    Pre-Bar Complaint Statements to Colleagues and Superiors

14       Plaintiff alleged that he told colleagues in the SFDA that SFPD attorneys had a pattern of

15   filing bar complaints against ADAs they deemed insufficiently inclined to settle cases.  FAC ¶ 42.

16   Plaintiff also alleged that he told his colleagues and supervisors that he believed such a complaint

17   would be filed against him.[4]  *Id.*  Plaintiff's pre-bar complaint statements—which Plaintiff once

18   _____

19   [3] To be sure, Plaintiff's petition was likely not made in his capacity as a public employee.  When
     Plaintiff "first suggested s public records request to obtain the inappropriate e-mails being sent to

20   all public defender staff [he] was asked not to do so by [the Chief of the Criminal Division]
     Marshall Khine because it would draw additional retaliation."  Pl.'s Decl. ¶ 33.  Plaintiff "was

21   later contacted by Chief of Staff Sharon Woo and told they cannot tell [him] not to do anything
     that could aid in [his] bar defense and [he] was free to file anything [he] want[ed] regarding public

22   records, but it must be clear it is not being requested by the district attorney's office."  *Id.*  "It was
     explained to [Plaintiff by Mr. Khine and Ms. Woo] that [his] exercise of rights under the Sunshine

23   act would not be taken well and they were attempting to establish a détente and requesting
     documents from City employees would undermine that, so they wanted it clear [Plaintiff] was

24   doing it on [his] own as a private citizen to not escalate the issues with the City employees at the
     public defender's office."  Interrogatory Responses at 7.  Such discouragement, although not an

25   outright ban, appears to be enough to qualify Plaintiff's petitions as private speech made in
     contravention to his superiors' orders.  *See Greisen v. Hanken*, 925 F.3d 1097, 1112 (9th Cir.

26   2019) (finding "strong evidence" that plaintiff's speech contravened his superior's orders where
     defendant "instructed [plaintiff] to stay on his 'side' of city hall, and discouraged him from

27   speaking to [a city councilor] about the overall budget").

28   [4] Although Plaintiff listed these two statements as discrete instances of protected speech, the Court
     considers them together as they are closely linked.

United States District Court
Northern District of California

more does not corroborate through evidence—do not touch upon a matter of public concern.

These statements, made internally within the SFDA, are concerned with actions that SFPD

attorneys might take against Plaintiff and were made in the context of his ongoing feud with an

SFPD attorney.  *See, e.g.*, FAC ¶ 14-17 (detailing Plaintiff's extensive conflicts with one particular

SFPD attorney, Ms. Ilona Solomon); Opp'n at 6-9, 11 (same).  Although Plaintiff alleged a pattern

of bar complaints and misconduct that affected other ADAs, his efforts were designed to seek help

before a bar complaint was filed against *him* and to justify *his* refusal to speak with Ms. Solomon.

As Plaintiff stated in his complaint:

> Plaintiff predicted that the Public Defender's Office would file a
> similar complaint against him as well, because it would be
> consistent with their previous pattern and practice in filing such
> complaints against ADAs who took many cases to trial. Plaintiff
> asked his supervisors to intervene *before such a complaint against
> him* was filed. . . . Mr. Ostly informed his supervisors of Ms.
> Solomon's past behavior and that he was refusing to speak to Ms.
> Solomon because of her pattern of lying about interactions with
> Assistant District Attorneys.

FAC ¶ 14 (emphasis added).  Accordingly, these statements do not touch upon a matter of public

concern.  *See Desrochers*, 572 F.3d at 711-17 (finding that speech does not touch upon a matter of

public concern where the "speech was 'mere[ly an] extension[ ]' of [a] running spat," the speech's

content "reflects dissatisfaction with a superior's management style," and "[t]he fact that the

speech took the form of an internal employee grievance means that the public was never made

aware of [Plaintiff's] concerns." (quoting *Voigt v. Savell*, 70 F.3d 1552, 1560 (9th Cir. 1995)));

*Bouma*, 2010 WL 1531171, at *5 (stating that a complaint devoid of facts is insufficient to support

a First Amendment violation).

Even if Plaintiff's pre-bar complaint statements did touch upon a matter of public concern

because they alluded to a pattern of SFPD attorneys filing bar complaints against numerous

members of the SFDA's office, those statements still would not be protected speech because they

were made in Plaintiff's capacity as a public employee.  In *Hagen v. City of Eugene*, the court

examined whether a police officer's speech to coworkers and others within his chain of command

outlining his concerns surrounding officer safety was made as a public employee.  *Hagen v. City

of Eugene*, 736 F.3d 1251, 1258-59 (9th Cir. 2013).  The court held that because "[t]he evidence

United States District Court
Northern District of California

establishes that his concerns were directed to his coworkers and his superior officers" and because

plaintiff's safety concerns "were inextricably intertwined with his duties as a K–9 officer,"

plaintiff spoke as a public employee.  *Id.*; *see also Correa v. City of San Jose*, No. 5:12-CV-

05436-HRL, 2015 WL 5559893, at *10 n.5 (N.D. Cal. Sept. 16, 2015) (stating that speech directed

to coworkers is within the chain of command); *Soloway v. Cnty. Of Contra Costa, California*, No.

20-CV-02287-JSW, 2021 WL 6143859, at *5 (N.D. Cal. Nov. 23, 2021*), appeal dismissed*, No.

21-17112, 2022 WL 880683 (9th Cir. Jan. 10, 2022) (finding statements were made as a public

employee in part because plaintiff did not directly contravene her supervisor's orders).  Plaintiff's

statements similarly were made within Plaintiff's chain-of-command (*i.e.*, to his colleagues and

supervisors), were closely related to his job-related litigation against SFPD attorneys,[5] and did not

contravene his superiors' orders. Therefore, the statements were made in his role as a public

employee.

   Thus, Plaintiff's pre-bar complaint statements are not protected speech.

iv. <u>Complaints to Supervisors</u>

   "Following receipt of the Bar Complaint against him, Plaintiff complained to his

supervisors . . . that the Public Defender's Office was systematically filing frivolous State Bar

complaints against prosecutors in the SFDA as a scare tactic to prevent and discourage ADAs

from prosecuting cases through trial . . . ."  FAC ¶ 19.  Not only does Plaintiff once again fail to

document the precise content of his statements to his supervisors beyond conclusory allegations,

but his complaints about the bar complaint filed against him, which were made in connection with

disputes with SFPD attorneys, constituted matter of a personal and internal grievance.  *See*

*Desrochers*, 572 F.3d at 711-17; *Bouma*, 2010 WL 1531171, at *5.  Even if Plaintiff's complaints

did touch upon a matter of public concern by referencing a pattern of complaints, they still are not

protected speech as they were directed entirely internally to his superiors about the business of his

department and thus constituted public employee speech.

---

[5] Although Plaintiff averred that his speech was unrelated to his typical job duties, he has provided
no supporting facts or analysis from which the Court could draw a reasonable inference supporting
his contention.  *See* FAC ¶ 43 (merely stating that "[t]he subject matter of Plaintiff's speech was
not typical of his job duties").

United States District Court
Northern District of California

1          Accordingly, Plaintiff's internal complaints are not protected speech.

2                    v.       Report to the State Bar

3          Plaintiff alleged that he "report[ed] the misconduct described herein to the State Bar."

4   FAC ¶ 42.  Although it is unclear what specifically Plaintiff reported to the State Bar, it appears

5   that he was referencing action taken in 2017, when he "reported City employees Matt Sotorosen

6   and Sangita Singha for failing to communicate settlement offers to a criminal defendant."  Opp'n

7   at 5.  After this report (which Plaintiff did not produce in this matter), Plaintiff "testified on behalf

8   of the criminal defendant he had prosecuted at the subsequent ineffective assistance of counsel

9   hearing."  *Id.*  Plaintiff's report to the State Bar was inextricably entangled with the litigation he

10  engaged in as an ADA.  This speech involved individual attorneys' conduct in specific cases that

11  Plaintiff was litigating; it was made in the form of a confidential bar complaint and in the context

12  of Plaintiff's quarrel with specific SFPD attorneys.  Plaintiff's report to the state bar regarding

13  conduct of opposing counsel in his case does not touch upon a matter of public concern absent a

14  broader allegation of systematic conduct that transcended his individual case(s).  *See Desrochers*,

15  572 F.3d at 711-17; *Bouma*, 2010 WL 1531171, at *5.  Additionally, the report was connected to

16  Plaintiff's job-related litigation duties and the record supports the conclusion that it was not made

17  in contravention of his supervisors' orders.  Hence Plaintiff made this report as a public employee.

18  *See Miller*, 2015 WL 12811238, at *20 (finding State Bar complaint was made in plaintiff's

19  capacity as public employee where plaintiff filed it to "fulfill his obligations as" an Independent

20  Assessor).

21         Consequently, Plaintiff's report to the State Bar is not protected speech.

22                   vi.      Comments After Defendant Boudin's Election

23         Finally, Plaintiff's comments about the job security of ADAs are exemplars of speech

24  concerning a personal grievance.  "Plaintiff expressed his opinion to others in the SFDA that

25  Boudin would likely terminate him and every other Assistant District Attorney in the office who

26  would refuse to remain silent while SF Public Defenders systematically engaged in unethical

27  conduct."  FAC ¶ 27.  As with the other statements that Plaintiff claims in conclusory fashion to

28

United States District Court
Northern District of California

have made,[6] these comments were in the form of internal complaints, were made in the context of his dispute with SFPD attorneys in the performance of his job, and concerned his employment situation and the performance of his job (both because they concerned the statements Plaintiff made during his trials against SFPD attorneys and because they literally concerned whether he would be able to continue performing his job after Defendant Boudin took office).  Thus, Plaintiff's post-election comments concerning his employment prospects did not touch upon a matter of public concern.  Again, even if Plaintiff's comments did touch upon a matter of public concern, they were made in his capacity as a public employee.  These comments were made within the chain-of-command, without contravening his superiors' orders, and concerned his future employment with the SFDA (and so were directly related to his typical job responsibilities).

Thus, Plaintiff's post-election comments are not protected speech.

> **b.**   <u>Defendant Boudin Did Not Know About Plaintiff's Speech</u>

Because Plaintiff's speech and petitions were not protected, the Court's inquiry ends here. Plaintiff made no protected speech against which Defendants could have unlawfully retaliated. However, even if any of Plaintiff's speech or petitions were protected, Plaintiff has produced no evidence beyond the most conclusory and tenuous allegations that Defendant Boudin knew about any of his allegedly protected speech, let alone retaliated against it.  *See, e.g.*, Opp'n at 13 (averring that Defendant Boudin could have known about Plaintiff's protected speech because he shared an office with SFPD attorney Ilona Solomon—for three months in 2016, according to Defendants[7]—who had made allegations against Plaintiff); *id.* (stating in conclusory fashion that Defendant Boudin may have encountered individuals on the campaign trail or within the SFDA who complained about Plaintiff's speech); Reply at 5 (arguing that Plaintiff's contentions regarding the complaints are conclusory).

Defendant Boudin submitted testimony that he does not recall ever knowing about Plaintiff's speech or petitions.  *See* Docket No. 34-2 at 2.  No evidence within the record allows a

---

[6] Plaintiff's lack of relevant supporting evidence has become this order's leitmotif.

[7] *See* Docket No. 37-2 at 1-2.

United States District Court
Northern District of California

reasonable inference to the contrary.  Much of Plaintiff's speech was made to ADAs; there is evidence neither that this information was shared with SFPD attorneys when Boudin worked at that office, nor that it was shared with Defendant Boudin once he became DA.  While Plaintiff cites the fact that Defendant Boudin shared an office with Ms. Solomon, with whom Plaintiff had an adversarial relationship, that was for a span of three months in 2016, which pre-dates Plaintiff's speech.  There is no reasonable basis to infer that Ms. Solomon spoke to Defendant Boudin about Plaintiff.

Defendants stated that Defendant Boudin actually fired Plaintiff because he believed Plaintiff "was not an attorney who adequately carried out the responsibilities of being a criminal prosecutor" based on his experience trying matters against Plaintiff and because of complaints about Plaintiff's performance that he received on the campaign trail and from SFDA employees. Mot. at 17-18; Reply at 5; Docket No. 34-2 ¶ 3.  A bar complaint had been filed against Plaintiff alleging a "pattern of misconduct" comprising a failure to disclose potentially exculpatory evidence (i.e., a *Brady* violation), a violation of the duty of candor, multiple violations of "the duty to respect the courts and judicial officers," and two instances of improper prosecution. Docket No. 34-1 Ex. E, at 1.  The complaint was publicly accessible. *See* Opp'n at 8 (noting that Plaintiff had the complaint unsealed).  Hence the record evidence, if anything, corroborates Defendants' explanation of why Plaintiff was terminated.  There is no evidence in the record that supports a contrary reasonable inference.

As to the *San Francisco Chronicle* article on the SFPD's settlement practices, the record once again supports no reasonable inference that Defendant Boudin could have determined that Plaintiff was a source for the reporter.  The article was based on public court records and proceedings and involved multiple cases.  *See* Docket No. 36-6 Ex. 6.  As discussed above, Plaintiff was an attorney for only one of the multiple cases discussed in the article.  In that case— involving Beyoncé concert tickets—the article lists its source as the defendant in that case and makes no mention of Plaintiff.  *See id.*  The closest the article comes to mentioning Plaintiff is when it notes that "the district attorney's office was convinced the defendant [who allegedly stole the Beyoncé concert tickets] was telling the truth and moved to drop the case." *Id.* at 6.  And,

United States District Court
Northern District of California

although Plaintiff's petitions for records are a matter of public record, no reasonable inference can be made that Defendant Boudin was aware of these petitions. *See* Interrogatory Responses at 5 (only mentioning one member of the SFPD, Tyler Vu, who attended the SOTF hearing). During oral argument, Defendants noted that there was no evidence that anyone in the SFPD other than Mr. Vu had seen Plaintiff's Public Records Act requests. There is no evidence indicating that Defendant Boudin knew that Plaintiff reported SFPD attorney conduct to the State Bar. Nor is there any evidence that Boudin was involved in any way in the State Bar proceedings. Hence, no reasonable inference can be made that Defendant Boudin heard about Plaintiff's complaints and petitions (which Plaintiff now claims constituted protected activity), or that those complaints and petitions motivated any retaliation against Plaintiff.

Finally, there is no temporal proximity between the allegedly protected speech of Plaintiff and his termination. Plaintiff filed his petition with the SOTF on October 15, 2019, and Defendant Boudin fired him on January 10, 2020. FAC ¶¶ 24, 29. Although Defendant Boudin fired Plaintiff within three months of his petitioning the SOTF, this sequence was happenstance; Plaintiff was terminated along with others almost immediately upon Boudin's taking office, which happened to occur three months after the petition. *See* Pl.'s Decl. ¶ 32 (alleging that "Mr. Boudin terminated several other employees when he terminated my employment"). Timing of the termination was keyed to when Defendant Boudin took office, not the petition months before.

Plaintiff has shown neither that any of his speech or petitions qualify for First Amendment protection nor that Defendant Boudin even knew about any of this unprotected speech. Therefore, Plaintiff's Section 1983 First Amendment claims fail.

2.    Fourteenth Amendment Rights

"A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993); *see also Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (quoting *Portman*). "At its core, due process requires that a party have adequate notice and opportunity to be heard." *United States v. Alisal Water Corp.*, 431 F.3d 643, 657 (9th Cir. 2005).

United States District Court
Northern District of California

1    Defendants move for summary judgment on Plaintiff's claim that his Fourteenth

2    Amendment rights under the Due Process Clause and Equal Protection Clause were violated when

3    the SFDA ended its indemnification agreement with Plaintiff.[8]  The Court finds that Plaintiff's

4    claim fails, as he was provided adequate process to challenge any protected interest that

5    Defendants may have violated.  Plaintiff conflates the Due Process Clause with the Equal

6    Protection Clause and does not assert any specific Equal Protection violations.  *See* FAC ¶ 59.

7    The Court thus only analyzes Plaintiff's rights under the Due Process Clause and does so despite

8    Plaintiff's failure to address or present evidence regarding this issue in their opposition brief.  *See*

9    Opp'n.

10    Defendant Boudin stated that he terminated Plaintiff's indemnification agreement pursuant

11    to an office-wide policy implementing cost cutting measures.  *See* Docket No. 34-2.  Even if this

12    action affected Plaintiff's protected rights,[9] Plaintiff had access to a grievance process through his

13    union whereby he could (and ostensibly did) challenge Defendant Boudin's decision.  Mot. at 19;

14    *see* Docket No. 34-1 Ex. F (Plaintiff writing in an email that he "would like to file a union

15    grievance" regarding the end of the indemnification agreement).  The union grievance process

16    affords parties with adequate due process.  *See, e.g.*, *Stewart v. Leland Stanford Junior Univ.*, No.

17    C 05-04131 JW, 2006 WL 889437, at *4 (N.D. Cal. Apr. 5, 2006) ("Moreover, Ninth Circuit and

18    California legal authority have found that due process is satisfied by collective bargaining

19    agreements with grievance and arbitration procedures similar to that of the [collective bargaining

20    agreement] in this case.") (citing *Armstrong v. Meyers*, 964 F.2d 948 (9th Cir. 1992) (finding that

21    a three-step grievance and arbitration procedure provided plaintiff with due process)).  Plaintiff

22    does not point to anything in the record to dispute Defendants' contention that the grievance

23

24    [8] Plaintiff also asserts that the bar complaint Mr. Calloway filed against him violated his rights.
      However, as discussed above, Mr. Calloway is an SFPD employee; his actions against Plaintiff, an
25    SFDA employee, can neither be imputed to CCSF and Defendant Boudin nor engender actionable
      claims against them.  Moreover, the State Bar provides a forum where Plaintiff can adequately
26    defend against the charges levied against him.  *See* Mot. at 19.

27    [9] Because the Court finds that Plaintiff was afforded due process, we need not determine whether
      Defendants acted in an arbitrary and capricious matter or if they deprived Plaintiff of liberty or
28    property interests—though the Court notes that Plaintiff addressed *neither* of these issues in his
      opposition and thus waived any related argument he might have had.  Opp'n.

1   process here was inadequate.  Nor is there any basis for a reasonable inference that the grievance

2   process was inadequate.  Thus, Defendant Boudin did not violate Plaintiff's Fourteenth

3   Amendment rights when he terminated the indemnification agreement.

4   B.   FEHA Claims

5        Section 12940, part of the FEHA, states that:

6             It is an unlawful employment practice, unless based upon a bona
             fide occupational qualification, or, except where based upon
7             applicable security regulations established by the United States or
             the State of California: (a) For an employer, because of the . . . age .
8             . . of any person . . . to bar or to discharge the person from
             employment . . . . (h) For any employer . . . to discharge, expel, or
9             otherwise discriminate against any person because the person has
             opposed any practices forbidden under this part or because the
10            person has filed a complaint, testified, or assisted in any proceeding
             under this part. . . . (j)(1) For an employer . . . because of . . . age . . .
11            to harass an employee . . . . Harassment of an employee . . . shall be
             unlawful if the entity, or its agents or supervisors, knows or should
12            have known of this conduct and fails to take immediate and
             appropriate corrective action. . . . An entity shall take all reasonable
13            steps to prevent harassment from occurring. . . . (3) An employee of
             an entity subject to this subdivision is personally liable for any
14            harassment prohibited by this section that is perpetrated by the
             employee  . . . . (k) For an employer . . . to fail to take all reasonable
15            steps necessary to prevent discrimination and harassment from
             occurring.
16

17  Cal. Gov't Code § 12940(a), (h), (j), (k).  Defendants move for summary judgment on all FEHA

18  claims, arguing that their motive was nondiscriminatory and that Plaintiff fails to demonstrate that

19  Defendants harassed, retaliated against, or discriminated against him based on his age.  Mot. at 21-

20  25.  The Court agrees.

21       1.   Age Discrimination and Retaliation

22       In resolving FEHA age discrimination and retaliation claims, California courts use the

23  burden-shifting *McDonnell Douglas* test.  *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354, 8

24  P.3d 1089, 1113 (2000); *Scotch v. Art Inst. of California*, 173 Cal. App. 4th 986, 1005, 93 Cal.

25  Rptr. 3d 338, 354 (2009); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The

26  *McDonnell Douglas* test applies when, as here, defendants do not claim mixed motives for their

27  conduct.  *See Harris v. City of Santa Monica*, 56 Cal. 4th 203, 214, 294 P.3d 49, 54 (2013).

28  *McDonnell Douglas* is applied to FEHA claims as follows:

United States District Court
Northern District of California

> [T]his test initially requires a plaintiff to establish a prima facie case of discrimination. The plaintiff must generally provide evidence that: (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive. If the plaintiff satisfies this prima facie burden at trial, a presumption of discrimination arises, and the defendant must put forth legitimate, nondiscriminatory reason for its actions.  If the defendant does so, the plaintiff must then rebut these nondiscriminatory reasons with evidence of pretext. The plaintiff may then attack the employer's proffered reasons as mere pretexts for discrimination or offer other evidence of discriminatory motive, but the ultimate burden of persuasion remains on the plaintiff.

*Dinslage v. City & Cnty. of San Francisco*, 5 Cal. App. 5th 368, 378, 209 Cal. Rptr. 3d 809, 817 (2016); *see also Scotch*, 173 Cal. App. 4th at 1004 (elaborating that, to establish a prima facie case, "the plaintiff must, at a minimum, show the employer took actions from which, if unexplained, it can be inferred that it is more likely than not that such actions were based on a prohibited discriminatory criterion").  Essentially, *McDonnell Douglas* first requires plaintiffs to set forth their prima facie case, then, if plaintiffs do so, requires defendants to set forth a non-discriminatory or non-retaliatory reason for their actions, and if defendants are able to set forth such a reason, requires plaintiffs to either put forward other evidence of discriminatory motive or show that defendants' reasoning is pretextual.  This test "reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." *Guz*, 24 Cal. App. 4th at 354.

Here, the Court need not venture beyond the first step of the *McDonnell Douglas* test for Plaintiff's discrimination and retaliation claims.  Plaintiff, despite a liberal construction of his evidence, does not present evidence from which the Court could reasonably infer that Defendant Boudin acted with discriminatory motive when firing him, and thus does not establish a prima facie case for his discrimination claim.  Plaintiff also does not present evidence from which the Court could reasonably infer that Defendants engaged in any protected conduct against which Defendants could retaliate, and thus does not establish a prima facie case for his retaliation claim.

a.   <u>Discrimination</u>

Plaintiff claims that Defendant CCSF violated Cal. Gov't Code § 12940(a) by firing him because of his age.  FAC ¶¶ 62-79.  Section 12940(a) prohibits "an employer, because of the . . . age . . . of any person . . . to discharge the person from employment."  Cal. Gov't Code § 12940(a).  To prove FEHA discrimination, a plaintiff must show: "(1) she is a member of a protected class; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action, such as termination; and (4) some other circumstances that suggest a discriminatory motive."  *Lawler v. Montblanc N. Am., LLC,* 704 F.3d 1235, 1242 (9th Cir. 2013). Defendants argue that the evidence Plaintiff put forward to establish his prima facie case was "conclusory" and "insufficient as a matter of law, particularly as it fails to produce any evidence suggesting a discriminatory motive."  Opp'n at 22; Reply at 13, 17.  The Court agrees.  Plaintiff has failed to produce evidence demonstrating any circumstances that suggest that Defendant Boudin had a discriminatory motive in firing him.

Plaintiff argues that age discrimination influenced his termination because most ADAs terminated by Defendant Boudin, including Plaintiff, "were over 40 and replaced by younger employees."  FAC ¶¶ 62-69; Opp'n at 13-15; *see also* Pl.'s Decl. ¶ 32 ("[A]ll the people [Defendant Boudin] terminated were considerably older and more experienced than the younger, inexperienced people he hired as replacements.").  However, Plaintiff provides no evidence that Defendant fired older attorneys and replaced them with younger attorneys.

Plaintiff also claims that Defendant Boudin had an improper, age-related motive under a "cat's paw" theory of liability since "the evidence is overwhelming that the campaign trail statements and [SFDA] employees [Defendant Boudin] referred to [as having influenced his decision to fire Plaintiff] would likely be the same persons acting unlawfully towards [Plaintiff] or repeating the statements of those acting unlawfully towards [Plaintiff]."  Opp'n at 15.  Essentially, Plaintiff maintains that members of the public and SFDA employees harbored age-related animus and that they attempted to influence Defendant Boudin to fire Plaintiff because of his age.  This assertion is also conclusory.  Plaintiff has not provided a scintilla of evidence from which a reasonable influence could be drawn that members of the public or SFDA attorneys who spoke

1    with Defendant Boudin harbored any age-related animus.  Indeed, such a claim would appear to be

2    at odds with Plaintiff's theory that the basis of the animus against him was his First Amendment

3    activities rather than his age.

4         Plaintiff does point to a specific instance where a "City employee" referred to Plaintiff on

5    Twitter as a "50 year old man acting like a clown."  Docket No. 34-1 Ex. G; Interrogatory

6    Responses at 11.  Plaintiff argues that "[i]f my age was not a factor in my termination City

7    employees would not be referencing it."  Interrogatory Responses at 10.  However, this comment

8    is not even disparaging Plaintiff for his age; rather, it is chastising Plaintiff for not acting at a

9    maturity level equivalent to his age.  Even if it were disparaging Plaintiff for his age, this single

10   mention of Plaintiff's age, made after Plaintiff's termination by an employee whose role within the

11   city is unspecified and who did not terminate Plaintiff, does not allow for a reasonable inference

12   that age was a motivating factor in Defendant Boudin's decision to fire Plaintiff.

13        Plaintiff has failed to provide evidence suggestive of discriminatory motive, and thus does

14   not establish a prima facie case of FEHA discrimination.  *See Sidlow v. Nexstar Broad., Inc.*, No.

15   1:14-CV-00657-TLN, 2015 WL 1044763, at *4 (E.D. Cal. Mar. 10, 2015) (holding, in the context

16   of judgment on the pleadings, that "Plaintiffs simply point to a policy that has an allegedly

17   disparate impact on employees over the age of 40. Plaintiffs do not provide sufficient facts to

18   support their allegation that age was a substantial motivating reason for Defendant's conduct in

19   terminating Plaintiffs or that Defendant intended to discriminate against this protected class");

20   *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 433, 60 Cal. Rptr. 3d 359, 366 (2007))

21   ("[P]laintiff's subjective beliefs in an employment discrimination case do not create a genuine

22   issue of fact; nor do uncorroborated and self-serving declarations.").  Even if Plaintiff had

23   established his prima facie case, Defendants have put forward a non-discriminatory reason for

24   firing Plaintiff, which Plaintiff has not shown to be pretextual.  *See* Mot. at 17-18 ("Mr. Boudin

25   believed Plaintiff was not an attorney who adequately carried out the responsibilities of being a

26   criminal prosecutor, a belief Mr. Boudin developed after trying matters against Plaintiff; Mr.

27   Boudin had also received complaints from community members while on the campaign trail

28   regarding Plaintiff's performance; and Mr. Boudin had received complaints regarding Plaintiff

United States District Court
Northern District of California

1    from other employees within the San Francisco District Attorney's Office.").

2         Because Plaintiff has not established a prima face case for FEHA discrimination, his claim

3    fails.

4              b.    Retaliation

5         FEHA Section 12940(h) prohibits an employer from "discriminat[ing] against any person

6    because the person has opposed any practices forbidden under this part or because the person has

7    filed a complaint, testified, or assisted in any proceeding under this part."  Cal. Gov't Code §

8    12940(h).  To prove FEHA retaliation, a plaintiff must show that "(1) he or she engaged in a

9    'protected activity,' (2) the employer subjected the employee to an adverse employment action,

10   and (3) a causal link existed between the protected activity and the employer's action."  *Yanowitz*

11   *v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042, 116 P.3d 1123, 1130 (2005).  Defendants maintain

12   that Plaintiff engaged in no FEHA protected conduct against which Defendants could retaliate.

13   Reply at 13-14.  The Court agrees.

14        When asked what FEHA protected conduct he engaged in, Plaintiff responded:

15             For over a year I reported the harassment and retaliation to my
               employer, and they acknowledged they were already aware of it.
16             Moreover, I advised my employer I expected to experience the same
               treatment my coworkers did after the [ineffective assistance of
17             counsel] motion where I testified on behalf of a defendant and the
               article about City employees not communicating settlement offers.
18

19   Interrogatory Responses at 11; *see also* FAC ¶ 76 (alleging that Defendants "terminat[ed] his

20   employment in response to his complaints of harassment and retaliation of himself and his

21   coworkers").  However, FEHA does not make it unlawful to retaliate against all First Amendment

22   type activity; rather, it only protects individuals who have "opposed any practices forbidden *under*

23   *this part*."  Cal. Gov't Code § 12940(h) (emphasis added).  "Thus, protected activity takes the

24   form of opposing any practices forbidden by FEHA or participating in any proceeding conducted

25   by the DFEH or the Fair Employment and Housing Council (FEHC)."  *Nealy v. City of Santa*

26   *Monica*, 234 Cal. App. 4th 359, 380, 184 Cal. Rptr. 3d 9, 25 (2015); *see also Yanowitz*, 36 Cal. 4th

27   at 1043 ("[A]n employee's conduct may constitute protected activity for purposes of the

28   antiretaliation provision of the FEHA not only when the employee opposes conduct that ultimately

United States District Court
Northern District of California

1    is determined to be unlawfully discriminatory *under the FEHA*, but also when the employee

2    opposes conduct that the employee reasonably and in good faith believes to be discriminatory,

3    whether or not the challenged conduct is ultimately found to *violate the FEHA*." (emphasis

4    added)).  Here, Plaintiff alleged that Defendants retaliated against him for opposing the SFPD's

5    supposed practice of failing to communicate settlement offers, *not* for opposing age-related

6    discrimination or any other conduct made unlawful by FEHA.

7          Accordingly, Plaintiff has failed to allege that he engaged in any protected activity and

8    therefore does not establish a prima facie case for FEHA retaliation.  Even if he had established

9    his prima facie case, Defendants have shown a non-retaliatory motive for firing Plaintiff, as

10   discussed above.  Plaintiff's FEHA retaliation claim fails.

11         2.    Harassment

12         FEHA Section 12940(j) prohibits employers from harassing employees based on age.  Cal.

13   Gov't Code § 12940(j).  Section 12940(k) requires employers "to take all reasonable steps

14   necessary to prevent discrimination and harassment from occurring."  *Id.* § 12940(k).  "To

15   establish a claim for harassment, a plaintiff must demonstrate that: (1) she is a member of a

16   protected group; (2) she was subjected to harassment because she belonged to this group; and (3)

17   the alleged harassment was so severe that it created a hostile work environment."  *Lawler*, 704

18   F.3d at 1244 (citing *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130-31, 980 P.2d 846,

19   851 (1999)).  "[T]he plaintiff must show a concerted pattern of harassment of a repeated, routine

20   or a generalized nature."  *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 610, 262

21   Cal. Rptr. 842, 852 (Ct. App. 1989); *see also Lawler*, 704 F.3d at 1244 (same).  Defendants argue

22   that Plaintiff has put forward no evidence supporting his harassment claim.  Mot. at 23-24.  The

23   Court agrees: Plaintiff has failed to produce any evidence that he was harassed because of his age.

24   Therefore, Plaintiff does not establish a prima facie case for FEHA harassment.

25         Plaintiff alleged that Defendants harassed him due to his age.  *See* FAC at 4 ("Ostly also

26   alleges FEHA claims for Age Discrimination, Harassment and Retaliation.").  However, this

27   allegation is conclusory.  Plaintiff presents no evidence of this.  While Plaintiff once again points

28   to the "fifty year old man acting like a clown" Twitter post, this statement fails to demonstrate

United States District Court
Northern District of California

25

1    age-motivated harassment for the same reasons it failed to demonstrate age-motivated

2    discrimination.  Again, the Tweet is not even disparaging Plaintiff for his age; rather, it is

3    chastising Plaintiff for not acting at a maturity level equivalent to his age.  Additionally, this single

4    mention of Plaintiff's age, made after Plaintiff's termination by an employee whose role within the

5    city is unspecified and who did not terminate Plaintiff, does not qualify as harassment.  *See Lyle v.*

6    *Warner Bros. Television Prods.*, 38 Cal. 4th 264, 283, 132 P.3d 211, 223 (2006) ("With respect to

7    the pervasiveness of harassment, courts have held an employee generally cannot recover for

8    harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a

9    concerted pattern of harassment of a repeated, routine, or a generalized nature.").

10          Plaintiff does claim that "he was a victim of discrimination and harassment based on sex

11   and age (by Solomon and others)." [10]  Opp'n at 9.  However, no reasonable inference can be made

12   from this conclusory statement that any of the actions allegedly taken against Plaintiff by Ms.

13   Solomon or any other city employees were motivated by age.

14          Plaintiff has not provided any evidence that he was harassed because of his age.  Plaintiff's

15   FEHA harassment claim thus fails.  Because Plaintiff's harassment and retaliation claims fail,

16   Plaintiff's 12940(k) claim, alleging a failure to prevent harassment and retaliation, also fails.  *See*

17   *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289, 73 Cal. Rptr. 2d 596, 602 (1998), *as*

18   *modified* (May 12, 1998) ("Employers should not be held liable to employees for failure to take

19   necessary steps to prevent such conduct, except where the actions took place and were not

20   prevented."); *Lattimore v. Euramax Int'l, Inc.*, 771 F. App'x 433, 434 (9th Cir. 2019) ("[F]ailure to

21   prevent discrimination/retaliation claims . . . are derivative of . . . discrimination and retaliation

22   claims.").

23   ///

24   ///

25   _____

26   [10] In his opposition, Plaintiff notes for the first time that "he was a victim of discrimination and
     harassment based on sex."  Opp'n at 9.  This phrase constitutes the entirety of Plaintiff's claims of

27   sex discrimination.  The Court does not consider Plaintiff's sex discrimination claim because it
     was not alleged in his complaint, and "[a] plaintiff cannot raise a claim for the first time in

28   response to a motion for summary judgment."  *Ziptronix, Inc. v. Omnivision Techs.*, Inc., 71 F.
     Supp. 3d 1090, 1099 (N.D. Cal. 2014).

United States District Court
Northern District of California

1    Plaintiff fails to establish his Section 1983 and FEHA claims.  Accordingly, the Court

2 grants Defendants' motion for summary judgment as to all of Plaintiff's claims.[11]

3                         **V.    CONCLUSION**

4    The Court **GRANTS** Defendants' motion for summary judgment.

5    This order disposes of Docket Nos. 34 and 41.  The Clerk is instructed to enter judgment

6 for Defendants and close the case.

7

8    **IT IS SO ORDERED**.

9

10 Dated: June 15, 2023

11

12

13                                    _____

                                     EDWARD M. CHEN

14                                    United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26    _____

27 [11] Because summary judgment is granted against Plaintiff on these grounds, the Court need not address Defendants' evidentiary objections, qualified immunity or *Monell* arguments, or their contention that the Section 1983 claims are improperly brought against Defendant Boudin.
28 Additionally, because summary judgment is granted against Plaintiff, Defendants' motion *in limine* is denied as moot.  *See* Docket No. 41.